1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

9

10

**Tiffany Harris, Dianne Sullivan, and Virginia Cole individually and on behalf of others similarly situated,**

Case No.:

11

12

13

Plaintiff,

**Class Action Complaint for Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.;**

14

v.

**Senior Life Insurance Company,**

15

16

**JURY TRIAL DEMANDED**

17

Defendant.

18

INTRODUCTION

19

20

1. Plaintiff Tiffany Harris ("Plaintiff Harris"), plaintiff Dianne Sullivan ("Plaintiff

21

Sullivan"), and plaintiff Virginia Cole ("Plaintiff") (jointly as the "Plaintiffs"),

22

bring this complaint, by and through their attorneys and on behalf of all others

23

24

similarly situated, against Defendant Senior Life Insurance Company ("SLIC"

25

or "Defendant") to secure redress for violations of the Telephone Consumer

26

Protection Act ("TCPA"), 47 U.S.C. § 227.

27

2. This is a putative class action pursuant to the Telephone Consumer Protection

28

Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3. Defendant is an insurance company that caters towards senior citizens. In an attempt to solicit consumers, Defendant engages in telemarketing phone calls.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiffs also seeks statutory damages on behalf of themselves and members of the class, and any other available legal or equitable remedies.

5. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiff's counsel, which Plaintiffs allege on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in the Eastern District of Washington.

8. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of

Defendant named.

10.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute, the TCPA. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiffs seek up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call-in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of CAFA diversity jurisdiction and CAFA jurisdiction are present.

11.     Venue is proper in the United States District Court for the Eastern District of Washington pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services, as well as attempts to collect from consumers within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against the Plaintiff Sullivan occurred within the State of Washington and, on information and belief, Defendant has made the same phone calls complained of by Plaintiffs to other individuals

within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Washington.

## PARTIES

12.     Plaintiff Harris is a natural person residing in the City of Mount Olive, State of Alabama.

13.     Plaintiff Sullivan is a natural person residing in the City of Spokane, State of Washington.

14.     Plaintiff Cole is a natural person residing in the City of Hartsville, State of Tennessee.

15.     Defendant is a company headquartered in Thomasville, Georgia, conducting business in servicing final expenses.

## THE TCPA

16.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system **or artificial or prerecorded voice**; (3) without the recipient's prior express consent.   47 U.S.C. § 227(b)(1)(A).

17.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

18.     The TCPA further states that it is prohibited to "any person from making transmitting a telephone solicitation to the telephone number of any subscriber included in such database." 47 U.S.C. § 227(c)(3)(F).

19.     A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

> **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> **(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
>
> **(C)** both such actions.

20.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act

of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

21.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.  See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

22.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates."  In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

23.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  See Golan v. Veritas Entm't, LLC, 788 F.3d 814, 820 (8th Cir. 2015).

24.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." Golan, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12);  In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

25.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.  Id.

26.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

27.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

28.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

29.     Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

### PLAINTIFF HARRIS'S FACTUAL ALLEGATIONS

30.     At all times relevant, Plaintiff Harris was an individual residing within the State of Alabama.

31.     Plaintiff Harris's phone is used for residential purposes.

32.     Plaintiff Harris has been on the National Do Not Call Registry since approximately January 26, 2022.

33.     Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C § 227(c)(3)(F).

34.     On or around January 3, 2023, Plaintiff Harris received a call from the number 205-559-4699. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Plaintiff Harris answered the call and was connected to a robot with the avatar name, Alex. Plaintiff Harris was asked for her age and zip code before being transferred to a live agent who identified the caller as "Senior Life Insurance." Plaintiff Harris was then disconnected.

35.     On or around March 2, 2023, Plaintiff Harris received a call from the number 205-559-4788. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Plaintiff Harris answered the call and was connected to a robot with the avatar name, Alex. Plaintiff Harris was asked for her age and zip code before being transferred to a live agent, Richard. Richard identified the caller as "Senior Life Insurance."

36.     That same day, Plaintiff Harris received a call from the number 763-528-0363. Upon information and belief, this number belongs to Defendant and/or Defendant's agent, Richard. Richard told Plaintiff Harris that the company calling her was "Senior Life Insurance" whose address is in Thomasville, Georgia. He continued to call Plaintiff Harris several times and sent text messages from the number 763-528-0363.

**PLAINTIFF SULLIVAN'S FACTUAL ALLEGATIONS**

37.     At all times relevant, Plaintiff Sullivan was an individual residing within the State of Washington.

38.     At all times relevant, Defendant conducted business in the State of Washington.

39.     Plaintiff Sullivan's phone is used for residential purposes.

40.     Plaintiff Sullivan has been on the National Do Not Call Registry since approximately April 24, 2009.

41.     Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C § 227(c)(3)(F).

42.     On or around August 20, 2023, Plaintiff Sullivan received a call from the number 509-204-5313. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. When the number is called, it connects to Defendant. Plaintiff Sullivan rejected this call.

43.     On or around August 25, 2023, Plaintiff received a call from the number 509-204-5365. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. When this number is redialed, it goes directly to Defendant. Plaintiff Sullivan expressed that she was not interested and requested not to be called again.

44.     On or around August 27, 2023, Plaintiff Sullivan received a call from the number 509-245-0480. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. When this number is redialed, it goes directly to Defendant. Plaintiff Sullivan rejected this call.

## PLAINTIFF COLE'S FACTUAL ALLEGATIONS

45.     At all times relevant, Plaintiff Cole was an individual residing within the State of Tennessee.

46.     Plaintiff Sullivan's phone is used for residential purposes.

47.     Plaintiff Sullivan has been on the National Do Not Call Registry since approximately April 6, 2023.

48.     Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C § 227(c)(3)(F).

49.     On May 11, 2023 Plaintiff Cole received a phone call from 615-953-9901 from a caller identifying itself as "Senior Benefits." Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Plaintiff Cole told the caller that she was not interested and to not call her again.

50.     Later that day on May 11, 2023, Plaintiff Cole received a phone call from 615-953-5975 from a caller identifying itself as "Senior Benefits." Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Plaintiff Cole attempted to determine who was calling, but was disconnected.

51.     Subsequently, on May 11, 2023, Plaintiff Cole received a phone call from 615-486-6872.  This was a live caller named Steve. Steve mentioned that the previous call with him and Plaintiff Cole had been disconnected. Steve gave his license number of 46887. Steve indicated his call back number was 478-

466-9001. When called, this number connects to Defendant.

**GENERAL ALLEGATIONS**

52. Plaintiffs received the phone calls within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant made other phone calls to individuals residing within this judicial district and throughout the United States.

53. At no point in time did Plaintiffs provide Defendant with their express written consent to be contacted. This is in violation of 47 U.S.C. § 227(a)(5).

54. Defendant's unsolicited phone calls caused Plaintiffs actual harm, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

55. Defendant's phone calls also inconvenienced Plaintiffs and caused disruption to their daily life.

56. Defendant's unsolicited phone calls caused Plaintiffs actual harm. Specifically, Plaintiffs estimate that they spent numerous hours investigating the unwanted phone calls including how they obtained their numbers and who the Defendant was.

57. Furthermore, Defendant's phone calls took up memory on Plaintiffs' cellular phones. The cumulative effect of unsolicited phone calls and voicemails like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

58. In a recent decision en banc by the Eleventh Circuit, the Court found that plaintiffs have a concrete injury under Article III with as little as one call or text from a defendant. *Drazen v Godaddy.com, LLC*, USCA11, Case No. 21-10199 (11th Cir. en banc July 24, 2023). The Eleventh Circuit specifically found:

> In sum, then, we hold that the harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion. Both harms represent "an intrusion into peace and quiet in a realm that is private and personal." Id. at 462 n.1. For that reason, the harms are similar in kind, and the receipt of an unwanted text message causes a concrete injury. While an unwanted text message is insufficiently offensive to satisfy the common law's elements, Congress has used its lawmaking powers to recognize a lower quantum of injury necessary to bring a claim under the TCPA. As a result, the plaintiffs' harm "is smaller in degree rather than entirely absent." Hunstein, 48 F.4th at 1249.

## CLASS ALLEGATIONS

**PROPOSED CLASS**

59. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated.

60. Plaintiffs Harris brings this case on behalf of the Class defined as follows:

The TCPA Prerecorded Voice Class

All persons within the United States who received any solicitation/telemarketing phone calls from Defendant to said person's cellular telephone made through the use of an artificial or prerecorded voice call and such person had not previously consented to receiving such calls

within the four years prior to the filing of this Complaint.

61. Plaintiffs Harris, Sullivan, and Cole bring this case on behalf of the Class defined as follows:

The TCPA DNC Class

All persons within the United States who received two phone calls within a 12 month period from Defendants to said person's telephone, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendants first call, within the four years prior to the filing of this Complaint.

62. Defendant and its employees or agents are excluded from the Class. Plaintiffs does not know the number of members in the Class but believe the Class members number in the several thousands, if not more.

**NUMEROSITY**

63. Upon information and belief, Defendant has placed prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. Defendant has also placed calls to thousands of consumers' residential numbers on the national do-not-call registry. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

64. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's

call records.

**COMMON QUESTIONS OF LAW AND FACT**

65. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using a pre-recorded voice;

(2) Whether Defendant made non-emergency calls to Plaintiff's and Class members' residential telephones that were registered on the national do-not-call registry;

(3) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

(4) Whether Defendant's conduct was knowing and willful;

(5) Whether Defendant is liable for damages, and the amount of such damages; and

(6) Whether Defendant should be enjoined from such conduct in the future.

55. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely made phone calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

56. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

57. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiffs are an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

58. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

59. The prosecution of separate actions by members of the Class would create a

risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(B)
### (ON BEHALF OF PLAINTIFF HARRIS AND THE CLASS)

60. Plaintiff Harris re-alleges and incorporates paragraphs 1-59 of this complaint as if fully set forth herein.

61. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or pre-recorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

62. Defendant – or third parties directed by Defendant – made non-emergency telephone calls to the cellular telephones of Plaintiff Harris and the other members of the Class defined below using an artificial or prerecorded voice.

63. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiffs and the other members of the putative Class when its calls were

made.

64. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using artificial or pre-recorded voice messages to make non-emergency telephone calls to the cell phones of Plaintiff Harris and the other members of the putative Class without their prior express written consent.

65. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that it was using an artificial or prerecorded voice. The violations were therefore willful and knowing.

66. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff Harris and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiffs and the class are also entitled to an injunction against future calls. *Id*.

67. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

68. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that its conduct was a violation of the TCPA.

69. Because Defendant knew or should have known that Plaintiffs and Class Members had not given prior express consent and/or revoked consent to receive artificial or pre-recorded voice calls, the Court should treble the amount of statutory damages available to Plaintiffs and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

70. As a result of Defendant's violations, Plaintiffs and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**Negligent and Willful Violations of the TCPA, 47 U.S.C. § 227(c)(5)**

71. **(On Behalf of Plaintiffs and the Class)**Plaintiffs re-allege and incorporate paragraphs 1-59 as if fully set forth herein.

72. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State.

   **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

   **(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

   **(C)** both such actions.

73. Defendant – or third parties directed by Defendant dialed numbers without to make non-emergency telephone calls to the telephones of Plaintiffs and the other members of the Class defined below.

74. These calls were made without regard to whether or not Plaintiffs or class members were on the National Do Not Call Registry. In fact, Defendant did

not have prior express consent to call the cell phones of Plaintiffs and the other members of the putative Class when its calls were made.

75. Defendant has, therefore, violated § 227(c)(5) of the TCPA by making two or more non-emergency telephone calls to the phones of Plaintiffs and the other members of the putative Class without their prior express written consent.

76.62. Defendant knew that it did not have prior express consent to make these calls especially since Plaintiffs told Defendant she was not interested in what Defendant was offering. The violations were therefore willful or knowing.

77. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations. Plaintiff and the class are also entitled to an injunction against future calls. *Id.*.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the other members of the Class, prays for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.;

b. An injunction prohibiting Defendant from calling telephone numbers that are on the national do-not-call registry without the prior express permission of the called party;

c. An order naming Plaintiff as the class representative;

d.  An order naming Plaintiff's counsel as class counsel;

e.  An award of actual and statutory damages;

f.  An award of treble damages for willful violations; and

g.  Such further and other relief the Court deems reasonable and just.

**TRIAL BY JURY**

88. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Respectfully submitted,

**Kazerouni Law Group**

Date: February 2, 2024

BY: /s/ Ryan L. McBride
Ryan L. McBride, Esq.
WA State Bar No. 50751
**Kazerouni Law Group, APC**
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ryan@kazlg.com